Yeda L. BAKER, Plaintiff,

v.

THE LIBRARY OF CONGRESS, James
H. Billington, Librarian, and Donald
L. Scott, Deputy Librarian, Defen-
dants.

No. CIV.A. 99–2394(PLF).

United States District Court,
District of Columbia.

April 24, 2003.

Yeda Baker, Upper Marlboro, MD, pro se.

Jane M. Lyons, U.S. Attorney's Office, Washington, DC, for defendants.

## OPINION

PAUL A. FRIEDMAN, District Judge.

Plaintiff Yeda Baker, proceeding *pro se,* initially brought this action for unfair labor practices under the Federal Service Labor–Management Relations Act, 5 U.S.C. § 7101 *et seq.* She also alleged a deprivation of due process. In addition, Ms. Baker asserted that she was subjected to national origin and gender discrimination, sexual harassment, a hostile work environment, and retaliation. Defendants filed a motion to dismiss the complaint as to all claims and to dismiss Donald L. Scott as a defendant.

In response, plaintiff filed a "Request for Amendment," which included an opposition to defendants' motion to dismiss and a motion to amend her complaint to incorporate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Congressional Accountability Act of 1995, 2 U.S.C. § 1301 *et seq.,* alleging discrimination on the basis of gender and national origin, sexual harassment in the form of a hostile work environment, and retaliation. She also moved for summary judgment against defendants. Defendants treated plaintiff's submission as both an amended complaint and an opposition to the motion to dismiss and renewed their motion to dismiss, incorporating by reference their earlier arguments. Defendants also asked the Court to hold in abeyance plaintiff's motion for summary judgment pending resolution of defendants' motion to dismiss.

Upon consideration of the parties' arguments and the entire record, the Court will treat defendants' motion to dismiss as a motion to dismiss the amended complaint and will grant the motion with respect to all claims except plaintiff's claim of sexual harassment in the form of a hostile work environment and her claim of retaliation. The Court also will grant defendants' motion to dismiss Donald L. Scott as a defendant and will deny plaintiff's motion for summary judgment as moot.

## I. BACKGROUND

In October of 1992, the Library of Congress hired Yeda Baker as a GS–5 clerk in its Certification and Documents Section. *See* Plaintiff's Request for Amendment (hereinafter "Amended Complaint"), Appendix "Hearing," Hearing Officer's Report and Recommendations ("Hearing Report") at 2. In October 1995, plaintiff's supervisor, Charles Roberts, issued a counseling memorandum indicating his dissatisfaction with her job performance. *See id.* On March 10, 1997, Ms. Baker began requesting, through the Library's employee union, that she be transferred out of Certification and Documents to another service unit on account of relational problems with her co-workers. *See* Amended Complaint, Appendix "Union," Letter from Kenneth Mackie of March 10, 1997. The Library denied her request.

On June 3, 1997, Ms. Baker filed a formal complaint with the Library's Equal Employment Opportunity Complaints Of-

fice ("EEOCO") alleging sexual harassment in the form of a "hostile, intimidating, offensive work environment." *See* Defendants' Reply in Support of Motion to Dismiss at 3 and Appendix A, Exhibit A, Library of Congress Complaint of Discrimination by Yeda L. Baker, June 3, 1997 ("EEOC Complaint"). In her complaint, plaintiff cited disrespect, verbal insults and profanity, and made reference to two ambiguous incidents; she requested a transfer, a letter of admonition and $25,000. *See id.*

Two days later, on June 5, 1997, the Library issued a Proposed Adverse Action for Ms. Baker's termination. *See* Hearing Report at 2–3. The Library appointed a Reply Officer, Virginia Kass, to conduct an independent review of the matter. *See id.* at 3. The Reply Officer found that Ms. Baker worked in a hostile work environment and was the subject of sexual harassment and that the proposed termination was unwarranted. *See* Amended Complaint, Appendix "Reply Off," Memorandum from Virginia L. Kass of August 25, 1997 at 2 ("Reply Officer's Report"). The Reply Officer recommended that Ms. Baker be transferred, that her past performance ratings be modified to "satisfactory," and that she receive counseling from the Employee Assistance Office. *See id.* at 6.

On October 9, 1997, the Reply Officer's recommendations were rejected and Ms. Baker was terminated. *See* Hearing Report at 3. On October 30, 1997, the Library denied the union's request to postpone the termination decision, stating that several administrative remedies were available to plaintiff. *See* Amended Complaint, Appendix "Union," Memorandum from Marybeth Peters of October 30, 1997.

On January 7, 1998, the EEOCO notified Ms. Baker that her June 3, 1997 complaint "based on sexual harassment (hostile work environment)" had been accepted for formal processing and investigation. *See* Defendants' Reply in Support of Motion to Dismiss, Appendix A, Exhibit B, Letter from Welton B. Belsches, Acting Assistant Chief, EEOCO, to Yeda L. Baker, January 7, 1998 ("Belsches Letter"). Subsequently, in response to an EEOCO questionnaire, plaintiff submitted a letter detailing the basis of her allegations. *See* Amended Complaint, Appendix "EEOC," Questionnaire to Yeda L. Baker re: "ISSUE: Whether you were subjected to sexual harassment (hostile work environment) by a former fellow co-worker, which created an intimidating, hostile, and offensive work environment"; Letter from Yeda L. Baker to Jean Johnson, EEO Investigator, October 21, 1998 ("Questionnaire Response Letter").

In October 1998, Ms. Baker appealed her termination. *See* Hearing Report at 1. Pursuant to internal regulations, the Library appointed a Hearing Officer, Robert Perry, and conducted hearings on October 9, December 9, and December 10, 1998. *See id.* In his Report and Recommendations, the Hearing Officer found that plaintiff was the victim of sexual harassment in the form of a hostile work environment, that the Library wrongfully terminated her, that the refusal to transfer her was in direct conflict with the collective bargaining agreement, that the proffered reasons for her poor performance rating were contrived, and that the Library's failure to make available the Reply Officer's Report at the time of its issuance was a violation of Ms. Baker's due process rights. *See id.* at 4–9.[1] The Hearing Officer recom-

---

1. The Hearing Officer's report did not specify whether the hostile work environment suf-

fered by plaintiff was based solely on her gender or also on other factors such as race

mended reinstatement to an equivalent position in a different department with a retroactive within grade increase as well as compensation for lost wages and benefits. *See id.* at 9–10.

In accordance with Library regulations, the Library then appointed Deputy Librarian Donald Scott to render a final decision regarding Ms. Baker's termination. *See* Amended Complaint, Appendix "Hearing," Final Agency Decision. After reviewing the record, the Deputy Librarian determined that the evidence did not support the Hearing Officer's findings. *See id.* Specifically, he found that plaintiff had not been subjected to a hostile work environment "within the meaning of applicable federal law," that the Library was under no legal obligation to consider her requested transfer, and that Library regulations did not require that the Reply Officer's Report be included in the case file. *See id.* The Deputy Librarian also concluded that the record contained sufficient evidence to establish that Ms. Baker had failed to meet her job performance requirements. *See id.* Both plaintiff and her union requested that the Deputy Librarian reconsider his decision, but Mr. Scott informed them that Ms. Baker was not entitled to a review of this decision under Library regulations. *See* Amended Complaint, Appendix "Hearing," Letter from Yeda L. Baker of May 25, 1999; Letter from Kenneth Mackie of May 24, 1999; Letter from Donald L. Scott of June 10, 1999.

On August 3, 1999, Ms. Baker sought counseling from the Office of Compliance ("OC") pertaining to asserted violations of the Congressional Accountability Act ("CAA"). *See* Amended Complaint, Appendix "CCO," Letter from Yeda L. Baker of August 3, 1999. In her letter, plaintiff alleged that the Library had engaged in unfair labor practices, discriminated against her on account of her national origin and gender, subjected her to a hostile work environment, retaliated against her for filing an EEO complaint, and denied her due process. *See id.* Prior to receiving a response from the OC, plaintiff filed this action on September 9, 1999. On September 22, 1999, Ms. Baker received a right-to-sue notice from the OC advising her that she could either (1) file a formal complaint with the OC under Section 405 of the CAA, or (2) file a civil action in federal district court under Section 408 of the CAA. *See* Amended Complaint, Appendix "CCO," Notice of End of Mediation.

## II. DISCUSSION

### A. Jurisdiction Over Non–Discrimination Claims

■ Ms. Baker first seeks relief under the Federal Service Labor–Management Relations Act ("FSLMRA"), 5 U.S.C. § 7101 *et. seq.*, alleging that the Library engaged in unfair labor practices and violated its duty to bargain in good faith. *See* 5 U.S.C. §§ 7116, 7117. The Federal Labor Relations Authority ("FLRA") retains exclusive jurisdiction over claims brought under the FSLMRA, subject only to limited judicial review in the appropriate court of appeals. *See* 5 U.S.C. §§ 7103(a)(3) (incorporating Library of Congress within its scope of authority); 7105(a)(2)(E) (FLRA has authority to resolve issues relating to duty to bargain in good faith); 7105(a)(2)(G) (FLRA has authority to con-

---

or national origin. *See* Hearing Report at 4–5. In light of plaintiff's EEOC Complaint, however, which alleged only sexual harassment, and the specific findings of the report, which focus primarily on harassment against plaintiff by male co-workers with no mention of race or national origin, the Court concludes that the Hearing Report pertained only to harassment based on plaintiff's sex. *See* EEOC Complaint; Hearing Report at 4–9.

duct hearings and resolve complaints of unfair labor practices); 7123(a) (person aggrieved by final order of FLRA, with certain exceptions not relevant here, may appeal within 60 days to court of appeals). This Court has no jurisdiction over claims over which the FLRA has exclusive jurisdiction, since the statute clearly limits judicial involvement in such claims to three specific circumstances, none of which applies here. *See* 5 U.S.C. § 7123. Even where the statute authorizes judicial review of a final agency order in an unfair labor practices matter, review is limited to a court of appeals. *See* 5 U.S.C. § 7123(a); *Karahalios v. Nat'l Fed'n of Fed. Employees*, 489 U.S. 527, 532, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989); *Steadman v. Governor, United States Soldiers' and Airmen's Home*, 918 F.2d 963, 966–67 (D.C.Cir. 1990); *Council of Prison Locals v. Howlett*, 562 F.Supp. 849, 851 (D.D.C.1983), *aff'd*, 735 F.2d 1497 (D.C.Cir.1984). Because this Court has no jurisdiction, it must grant defendants' motion to dismiss plaintiffs' unfair labor practice claims brought under the FSLMRA.

■ Plaintiff also alleges that the Library violated her due process rights by failing to make certain reports available to her in a timely fashion. In cases where constitutional and statutory violations are inextricably linked, however, and Congress has created a remedial structure for the latter, the congressional scheme precludes the district courts from taking jurisdiction. *See Steadman v. Governor, United States Soldiers' and Airmen's Home*, 918 F.2d at 967 (citing *Wallace v. Lynn*, 507 F.2d 1186, 1189–90 (D.C.Cir.1974)).[2] The Court

therefore also grants defendants' motion to dismiss plaintiff's due process claim.

*B. Discrimination Claims: Jurisdiction and Exhaustion*

The core of plaintiff's complaint in this Court involves claims of national origin and gender discrimination, sexual harassment including hostile work environment, and retaliation. For these claims, plaintiff invokes both the Congressional Accountability Act, 2 U.S.C. § 1301 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

■ The purpose of the CAA is to make the guarantees of Title VII of the Civil Rights Act of 1964, among other enumerated laws, applicable to the Legislative Branch. *See* 2 U.S.C. § 1302. While the Library is technically an arm of Congress, *see* 2 U.S.C. § 171 (Congress establishes for itself a library), the CAA's protection does not extend to Library employees. *See* 2 U.S.C. § 1301(3) (providing that the CAA applies to any employees or applicants for employment in nine specific legislative offices, of which the Library of Congress is not one). Rather, Title VII applies to the Library by its own terms. *See* 42 U.S.C. § 2000e–16(a) ("All personnel actions affecting employees or applicants for employment ... in ... the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin."). Plaintiff's claims based on the CAA therefore will be dismissed for lack of subject matter jurisdiction.

■ With respect to the majority of plaintiff's allegations of national origin and gender discrimination under Title VII, the

---

**2.** There is an exception to this rule when the administrative proceeding cannot adequately address the alleged constitutional violation. *See National Treasury Employees Union v. King*, 961 F.2d 240, 243 (D.C.Cir.1992). In this case, however, there is no reason to believe that Ms. Baker's asserted due process claim could not have been adequately addressed by the FLRA.

Library correctly argues that Ms. Baker has failed to exhaust her administrative remedies.[3] Title VII confers the right to file a civil action in federal court only when a party has been "aggrieved by the final disposition of his [administrative] complaint, or by the failure to take final action on his complaint." 42 U.S.C. § 2000e–16(c). In June 1997, Ms. Baker did file a complaint with the Library's EEOCO, but she did not raise any allegations of race or national origin discrimination; nor did she assert gender discrimination beyond her claim of sexual harassment in the form of a hostile work environment. *See* Defendants' Reply in Support of Motion to Dismiss, Appendix A, Exhibit A, EEOC Complaint. It is worth noting that the form constituting plaintiff's original complaint included a list of bases for the alleged discrimination, allowing plaintiff to check a box for each basis that applied to her. Although the list of potential bases of discrimination included race, color, sex and national origin, the only box plaintiff checked was the one marked "Sexual Harassment" and she wrote beside it "(Hostile, intimidating, offensive work environment)." *See id.* While plaintiff now contends that the acts based on which she brought the EEO complaint went beyond harassment and were driven by national origin and sexual animus, the record is clear that she failed to raise any of these claims administratively before coming to court. The Court therefore must grant defendants' motion to dismiss all of plaintiff's claims of national origin and gender discrimination except for her claims of sexual harassment.

■ The Library also challenges Ms. Baker's hostile work environment claim on exhaustion grounds. At the same time, defendants concede (as they must) that Ms. Baker did file an EEO charge with respect to her sexual harassment claim. What defendants fail to acknowledge is that the claim of sexual harassment encompasses a claim of hostile work environment based on sex. *See Davis v. Coastal Int'l Security, Inc.*, 275 F.3d 1119, 1122–23 (D.C.Cir.2002); *Gary v. Long*, 59 F.3d 1391, 1395 (D.C.Cir.1995) (recognizing that Title VII prohibition of discriminatory sexual harassment includes "discrimination that has created a hostile or abusive work environment") (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. at 64, 106 S.Ct. 2399). Thus, plaintiff did exhaust her administrative remedies with respect to her sexual harassment claim before filing suit.

■ If there were any doubt about this conclusion, as already noted and as the Library of Congress acknowledged, Ms. Baker affirmatively alleged "sexual harassment (hostile work environment)" in her EEO complaint in June of 1997 and described incidents supporting that charge in her response to the EEOCO follow-up questionnaire. *See* Defendants' Reply in Support of Motion to Dismiss, Appendix A, Exhibit A, EEO complaint; Exhibit B, Belsches Letter; Amended Complaint, Appendix "EEOC," Questionnaire Response Letter. Her allegations of sexual harassment in the form of a hostile work environment were the subject of the October and December 1998 hearings, and the

---

3. Defendants inaccurately treat plaintiff's sexual harassment claim as if it were entirely distinct from the claim of sex discrimination. *See* Motion to Dismiss at 5–8. As the Supreme Court has stated, however, sexual harassment is merely one form of discrimination based on sex. *See Meritor Savings Bank,* *FSB v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Thus, although the Court addresses plaintiff's discrimination claims as distinct from her claims of harassment, the Court notes that the latter are properly understood as a subset of the former.

hearing officer expressly found that plaintiff was the subject of a hostile work environment. *See* Hearing Report at 4. Thus, "the employer was accorded notice that its actions allegedly violated Title VII and was afforded adequate opportunity to pursue a mutually satisfactory resolution with the employee" and/or to litigate the issue administratively. *Childers v. Slater*, 44 F.Supp.2d 8, 16–17 (D.D.C.1999); *see also Brown v. Marsh*, 777 F.2d 8, 14 (D.C.Cir. 1985) ("adequacy of notice is the core of Title VII administrative exhaustion requirements."). Plaintiff exhausted her administrative remedies before filing suit with respect to her sexual harassment claim based on hostile work environment.[4]

### C. Hostile Work Environment: Failure to State a Claim

■ Defendants next assert that plaintiff has failed to state a claim with respect to sexual harassment based on a hostile work environment. Title VII prohibits sex discrimination that creates a hostile work environment if the "discriminatory intimidation, ridicule, and insult" is sufficiently abusive to affect a "term, condition, or privilege" of employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. at 65, 106 S.Ct. 2399). To state a *prima facie* claim of hostile work environment, plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on plaintiff's sex; (4) the harassment affected a term, condition or privilege of employment; and

(5) the employer knew or should have known of the harassment and failed to take any remedial action. *See Davis v. Coastal Int'l Security, Inc.*, 275 F.3d at 1122–23; *Childers v. Slater*, 44 F.Supp.2d at 27.

■ Whether the alleged discriminatory conduct has created a hostile work environment in violation of Title VII depends on the totality of the circumstances, including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . . [N]o single factor is required." *Harris v. Forklift Sys., Inc.*, 510 U.S. at 21–23, 114 S.Ct. 367; *see also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81–82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed"); *Davis v. Coastal Int'l Security, Inc.*, 275 F.3d at 1123–24 (same). Here, defendants argue that plaintiff has failed to demonstrate that the alleged harassment was based on her sex. Upon considering the totality of the circumstances, the Court does not agree. Plaintiff has made out a *prima facie* case and is entitled to have a jury decide the merits of her claim.

Plaintiff alleges that multiple co-workers engaged in various acts of offensive, intimidating, harassing and threatening conduct

---

4. As for plaintiff's retaliation claim, it is generally accepted that the exhaustion of administrative remedies doctrine does not apply to claims based on alleged retaliation. *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992); *Brown v. Hartshorne Public School District # 1*, 864 F.2d 680, 682 (10th Cir.1988); *accord Hayes v. Shalala*, 902 F.Supp. 259, 266 (D.D.C.1995) ("A plaintiff may raise a retaliation claim, although not a claim of discrimination, for the first time in federal court and need not exhaust his or her administrative claims").

toward her over a two-year period, during which time she repeatedly requested reassignment and filed an EEO complaint. Pl.'s Reply to Defs.' Mot. to Dismiss at 5–7. She alleges that one co-worker "constantly harassed and intimidated [her]" because she was a woman, "admonished [her], early on, to not 'fall in love with him'," and picked up a photograph from plaintiff's desk of two scantily clad women, one apparently assisting the other in applying a beauty treatment to her bare legs, "exclaiming that this is what [she] is up to, thus implying that she was a homosexual." *Id.* at 6–7 and Exhibit "Rich. Sharpe" (photograph). She further alleges that "other employees responded favorably to [this] ridicule. They were encouraged by this display of unmitigated harassment and participated joyfully in the action.... No other employee in the copyright office was treated as was Ms. Baker." *Id.* at 7. Taken together, these allegations support the claim that plaintiff suffered harassment and that the harassment was based on plaintiff's sex. *See, e.g., Dickerson v. Sec-Tek, Inc.,* 238 F.Supp.2d 66, 83–84 (D.D.C. 2002) (harassment was sufficiently connected to plaintiff's gender where abuser's statements indicated discriminatory attitude toward women and male employees were not subjected to same unpleasant and demeaning treatment). The Court finds that plaintiff has made out a *prima facie* case of harassment based on her gender and that defendants' motion to dismiss this claim therefore must be denied.[5]

### D. *Retaliation: Failure to State a Claim*

 The Library moves to dismiss Ms. Baker's retaliation claim for failure to state a claim upon which relief can be granted. To establish a *prima facie* case of retaliation, plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) the employer subjected the plaintiff to adverse action or to conduct that had an adverse impact on her; and (3) there is a causal link between the protected activity and the adverse action. *See Forman v. Small,* 271 F.3d 285, 299 (D.C.Cir.2001); *Thomas v. National Football League Players Ass'n,* 131 F.3d 198, 202 (D.C.Cir. 1997), *vacated in part on rehearing on other grounds,* No. 91–3332, 1998 WL 1988451 (D.C.Cir. Feb. 25, 1998); *Powell v. WMATA,* 238 F.Supp.2d 160, 166 (D.D.C. 2002). Defendants argue that plaintiff's retaliation claim should be dismissed because it fails to support the inference of a causal link between Ms. Baker's adverse action (termination) and her protected activity (filing an EEO complaint).

Defendants' argument is unpersuasive. Plaintiff filed her EEO complaint on June 3, 1997. Just two days later, she received the Proposed Adverse Action notifying her that her employment would be terminated and just four months later she was terminated. This chain of events certainly creates the appearance of a causal link between her filing of the EEO complaint and the Library's promulgation and execution of the Proposed Adverse Action for termination. *See Forman v. Small,* 271 F.3d at 299 (required causal link between protected activity and adverse action may be established by showing that employer knew of employee's protected activity and that adverse action took place shortly after employee engaged in that activity); *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985) (same). The Court therefore finds that plaintiff has made out a *prima facie* claim

---

**5.** The Court notes again that although plaintiff's allegations might support a *prima facie* case of harassment based on plaintiff's national origin as well her gender, plaintiff failed to exhaust her administrative remedies with respect to such a claim and therefore is limited to a gender-based harassment claim. *See supra* Section II.B.

of retaliation and denies defendants' motion to dismiss.

### E. *Defendant Donald Scott*

■ Plaintiff has included Deputy Librarian Donald Scott as a named defendant in this case. Civil actions proceeding under Title VII of the Civil Rights Act of 1964 are restricted to naming only the head of the agency as the defendant. *See* 42 U.S.C. § 2000e–16(c) (providing for civil suit under Title VII following exhaustion of administrative remedies and specifying that in any such civil action "the head of the department, agency, or unit, as appropriate, shall be the defendant."); *see also Hackley v. Roudebush,* 520 F.2d 108 (D.C.Cir.1975); *Wilkins v. Daley,* 49 F.Supp.2d 1, 3 (D.D.C.1999); *Taylor v. Gearan,* 979 F.Supp. 1, 6 (D.D.C.1997). In this case, James H. Billington, the Librarian of Congress, fulfills this role. Donald Scott, the Deputy Librarian, is not a proper defendant. Accordingly, the motion to dismiss Mr. Scott as a defendant is granted.

### F. *Plaintiff's Motion to File Second Amended Complaint*

■ On April 9, 2002, plaintiff sought leave to file a second amended complaint, but did not explain the grounds for her motion and did not include a proposed second amended complaint with the motion. *See* Local Civil Rule 15.1 ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended."). Defendants opposed the motion on the ground that plaintiff's motion contained no new facts or arguments that would defeat defendants' arguments for dismissal and argued that the proposed amendment therefore would be futile. *See* Defendants' Opposition to Plaintiff's Motion to File Second Amended Complaint at 1–3. Because the Court agrees with defendants that plaintiff's proposed amendment would ‸be futile, plaintiff's motion for leave to file a second amended complaint is denied. *See* Fed.R.Civ.P. 15(a); *Foman v. Davis* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

### III. CONCLUSION

This Court lacks jurisdiction over plaintiff's non-discrimination claims of unfair labor practices and due process violations. In addition, plaintiff has failed to exhaust her administrative remedies with respect to the majority of her claims of gender and national origin discrimination. Those claims therefore are dismissed. Because the Congressional Accountability Act does not apply to the Library of Congress, plaintiff's claim based on the CAA is dismissed for lack of subject matter jurisdiction. The Court denies defendants' motion to dismiss and retains jurisdiction with respect to the two claims on which plaintiff has demonstrated a *prima facie* case: sexual harassment in the form of a hostile work environment and retaliation. Plaintiff's motion for summary judgment is denied as moot and plaintiff's motion for leave to file a second amended complaint is denied on grounds of futility. Finally, Donald Scott is dismissed as a defendant. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

### ORDER

This case came before the Court on defendants' motion to dismiss or for more definite statement and plaintiff's motions for summary judgment and to file a second amended complaint. For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendants' motion to dismiss plaintiff's complaint [7] is GRANT-

ED IN PART and DENIED IN PART; it is

FURTHER ORDERED that defendants' motion to dismiss is GRANTED with respect to plaintiff's claims brought under the Federal Service Labor–Management Relations Act and the Congressional Accountability Act. These claims are dismissed, as are plaintiff's due process claims; it is

FURTHER ORDERED that defendants' motion to dismiss is GRANTED with respect to all of plaintiff's claims of discrimination other than her claim of sexual harassment in the form of a hostile work environment and her claim of retaliation; it is

FURTHER ORDERED that defendants' motion to dismiss is DENIED with respect to plaintiff's claim of sexual harassment in the form of hostile work environment; it is

FURTHER ORDERED that defendants' motion to dismiss is DENIED with respect to plaintiff's retaliation claim; it is

FURTHER ORDERED that defendants' motion to dismiss is GRANTED with respect to defendant Donald Scott. Mr. Scott is dismissed as a defendant; it is

FURTHER ORDERED that plaintiff's motion for summary judgment [13] is DENIED as moot; it is

FURTHER ORDERED that plaintiff's motion for leave to file a second amended complaint [22] is DENIED; and it is

FURTHER ORDERED that the parties shall appear for a status conference before this Court on May 20, 2003 at 9:00 a.m. to determine how this case shall proceed.

SO ORDERED.